## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 30 2018, 9:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Maurice Webster, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | August 30, 2018 <br><br> Court of Appeals Case No. <br> 18A-CR-336 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Stanley E. Kroh, Magistrate <br><br> Trial Court Cause No. <br> 49G03-1705-F5-18429 |

**Crone, Judge.**

## Case Summary

Maurice Webster appeals his convictions, following a jury trial, for level 5 felony leaving the scene of an accident resulting in death and class C misdemeanor operating a vehicle with a schedule I or II controlled substance or its metabolite in the body. He contends that the State presented insufficient evidence to support his class C misdemeanor conviction. He also asserts that the trial court abused its discretion during sentencing and that his five-year aggregate sentence, with one year suspended to probation, is inappropriate in light of the nature of the offenses and his character. Finding the evidence sufficient, no abuse of discretion, and that Webster has not met his burden to show that his sentence is inappropriate, we affirm.

## Facts and Procedural History

On May 13, 2017, beginning at 4:30 p.m., Webster was at his brother's house. While there, he drank four beers. He smoked marijuana at around 7:00 p.m. He left his brother's house around 8:30 p.m. At approximately 9:45 p.m., Webster was driving his truck north in the far-right lane around the 2300 block of Illinois Street in downtown Indianapolis. As he was approaching 24th Street, Webster noticed that the two cars in front of him were slowing down. Webster did not slow down, but instead moved over into the left lane to pass the other vehicles. Webster's vehicle struck ninety-year-old Marion Jones as she was crossing the street. Although he knew he had hit a pedestrian, Webster did not stop but instead drove to his daughter's house which was nearby. The

other motorists remained at the scene and called 911. Jones died at the scene from her injuries caused by the accident.

[3] After the accident, Webster bought a pint of vodka and walked around the canal drinking. At around 3:00 a.m. the next morning, Webster turned himself in to authorities at the Marion County Jail. He was transported to Eskenazi Hospital, where he consented to a blood draw. Subsequent testing of his blood indicated the presence of THC and its metabolite.

[4] The State charged Webster with level 5 felony leaving the scene of an accident resulting in death, level 5 felony driving while suspended, class C misdemeanor operating a vehicle with a schedule I or II controlled substance or its metabolite in the body, and class C misdemeanor operating a vehicle while intoxicated. Prior to trial, the State dismissed the driving while suspended charge. A jury trial was held on December 7 and 8, 2017. At the close of the State's evidence, the State dismissed the operating while intoxicated charge. The jury found Webster guilty of the remaining two charges. The trial court sentenced Webster to five years executed with one year suspended to probation for level 5 felony leaving the scene of an accident resulting in death. The court imposed a concurrent sentence of sixty days for the class C misdemeanor operating a vehicle with a schedule I or II controlled substance or its metabolite in the body. This appeal ensued.

# Discussion and Decision

## Section 1 – The State presented sufficient evidence to support Webster's conviction for operating a vehicle with a schedule I or II controlled substance or its metabolite in the body.

Webster first contends that the State presented insufficient evidence to support his conviction for class C misdemeanor operating a vehicle with a schedule I or II controlled substance or its metabolite in his body. When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor assess witness credibility. *Bell v. State*, 31 N.E.3d 495, 499 (Ind. 2015). We look to the evidence and reasonable inferences drawn therefrom that support the conviction, and will affirm if there is probative evidence from which a reasonable factfinder could have found the defendant guilty beyond a reasonable doubt. *Id.* In short, if the testimony believed by the trier of fact is enough to support the conviction, then the reviewing court will not disturb it. *Id.* at 500.

Regarding the challenged conviction, the State was required to prove that Webster operated a vehicle with a controlled substance listed in schedule I or schedule II of Indiana Code Section 35-48-2 or its metabolite in his body. Ind. Code § 9-30-5-1(c). The parties stipulated that the active ingredient in marijuana, THC, is listed as a schedule I controlled substance. Webster concedes that the State presented evidence that a blood test conducted five to six hours after the accident showed the presence of THC and its metabolite in his blood. Webster maintains, however, that the State presented insufficient

evidence that such substances were in his body when he operated a vehicle. We disagree.

[7] Webster admitted in his own trial testimony that he smoked marijuana at his brother's house earlier in the evening before the accident. In addition, Sergeant Michael Duke testified that he interviewed Webster at the hospital just prior to the blood draw and that, in response to a specific question regarding whether he had ingested any alcohol or drugs, Webster told Sergeant Duke that he drank beer and smoked marijuana at his brother's house before the accident. Webster also told Sergeant Duke that he walked around drinking vodka after the accident.

[8] On appeal, Webster argues that the State failed to present toxicology evidence connecting the marijuana he smoked before the accident to the THC and its metabolite detected in his blood five to six hours after the accident, and thus there is no evidence that he had THC or its metabolite in his body when he was driving. Indeed, Webster argues that his trial testimony suggests that he also smoked marijuana after the accident[1] and that it could have been THC and its metabolite from this marijuana that was detected in his blood. However, Webster made no claim to Sergeant Duke that he also smoked marijuana after the accident. It was the jury's prerogative to resolve any conflicts in the

---

[1] Webster's testimony in this regard was equivocal at best. When specifically asked by his own counsel if he smoked marijuana after the accident, Webster replied, "I don't recall." Tr. Vol. 3. at 30. When asked again about whether he also smoked marijuana while he was walking around drinking alcohol after the accident, Webster testified, "I probably took a hit of something. I'm not quite sure." *Id*.

evidence and to judge the credibility of Webster's trial testimony in light of his statement on the night of the accident. *See McAlpin v. State*, 80 N.E.3d 157, 163 (Ind. 2017) (noting that we trust juries to make inferential decisions and to sort out conflicting evidence in searching for the truth) (citations omitted). Based on the evidence presented, the jury could reasonably infer that the THC and its metabolite detected in Webster's blood five to six hours after the accident was from marijuana that he admitted to smoking prior to the accident, and therefore was in his blood at the time he was driving. There is sufficient evidence to support Webster's conviction for operating a vehicle with a schedule I or II controlled substance or its metabolite in his body.

## Section 2 – The trial court did not abuse its discretion during sentencing.

[9] Webster next argues that the trial court abused its discretion during sentencing. Sentencing decisions rest within the sound discretion of the trial court and are reviewed only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id*. A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all"; (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons"; (3) enters a sentencing statement that "omits reasons that are clearly

supported by the record and advanced for consideration"; or (4) considers reasons that "are improper as a matter of law." *Id*. at 490-91. However, the relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. *Id*.

[10] The trial court found Webster's remorse and the undue hardship his incarceration would place on his children to be mitigating factors. He claims that the court abused its discretion in failing to also find his act of turning himself in after the accident, albeit delayed, to be mitigating factor. It is well settled that a trial court is under no obligation to explain why a proposed mitigator does not exist or why the court gave it insignificant weight. *Sandleben v. State*, 22 N.E.3d 782, 796 (Ind. Ct. App. 2014), *trans. denied* (2015). It is understandable here why the trial court may not have found Webster's surrender to be a significant mitigating factor. As noted by the State, by the time Webster turned himself in several hours after the accident, authorities had already obtained information from eyewitnesses who stayed on the scene, were able to locate Webster's vehicle, and were able to determine that it had been involved in the accident. Thus, Webster's prosecution was inevitable and not necessarily facilitated by him. Moreover, Webster's conscious decision to wait several hours before going to authorities caused undue evidentiary problems for the State because of the delayed testing of Webster's blood for alcohol and controlled substances, prompting the State's dismissal of the operating while intoxicated charge. Under the circumstances, the trial court did not abuse its discretion in failing to find Webster's act to be a significant mitigating factor.

## Section 3 – Webster has not met his burden to demonstrate that his sentence is inappropriate.

[11] Webster also claims that his sentence is inappropriate and invites this Court to reduce it pursuant to Indiana Appellate Rule 7(B), which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden to persuade this Court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id.* at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id.* at 1224.

[12] We consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence is ordered suspended "or otherwise crafted using any of the variety of sentencing tools available to the trial judge." *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). In conducting our review, we do not look to see whether the defendant's sentence is appropriate or "if another sentence might be *more* appropriate;

rather, the question is whether the sentence imposed is inappropriate." *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007).

[13]  Regarding the nature of the offense, the advisory sentence is the starting point that the legislature has selected as an appropriate sentence for the crime committed. *Fuller v. State*, 9 N.E.3d 653, 657 (Ind. 2014). The sentencing range for a level 5 felony is between one and six years, with the advisory sentence being three years. Ind. Code § 35-50-2-6(b). The trial court here imposed a five-year sentence, with one year suspended to probation for the level 5 felony.[2]

[14]  Webster argues that the nature of his offense, leaving the scene of a fatal accident, was not especially egregious and thus he was not deserving of a sentence above the advisory. However, it is undisputed that Webster operated a vehicle after consuming alcohol and smoking marijuana, and he struck a pedestrian, resulting in horrific injuries and death. We are not persuaded that the nature of this offense warrants sentence reduction.

[15]  We are similarly unpersuaded after a review of Webster's character. The character of the offender is found in what we learn of the offender's life and conduct. *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). Included in the assessment of a defendant's character is a review of his criminal history. *Garcia v. State*, 47 N.E.3d 1249, 1251 (Ind. Ct. App. 2015), *trans. denied* (2016). A record of arrests is also relevant to a trial court's assessment of the

---

[2] Webster does not address the appropriateness of his concurrent sixty-day sentence for his class C misdemeanor, and neither do we.

defendant's character. *Cotto v. State*, 829 N.E.2d 520, 528 (Ind. 2005). Webster has a lengthy criminal history spanning almost thirty years. While not replete with serious crimes or a significant number of convictions, his numerous arrests show a clear pattern of alcohol and substance abuse. Webster admits to regular marijuana use, and in the instant case, rather than stay at the scene of the accident and offer his assistance, he selfishly fled and drank a pint of vodka. Webster's conduct does not reflect positively on his character. In sum, he has not met his burden to demonstrate that the sentence imposed by the trial court is inappropriate in light of the nature of the offenses or his character.

[16] Affirmed.

Najam, J., and Pyle, J., concur.