# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 07 2019, 9:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

ATTORNEY FOR APPELLANT

James A. Shoaf
Columbus, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

---

## IN THE
# COURT OF APPEALS OF INDIANA

---

Brian Stewart,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 7, 2019

Court of Appeals Case No.
18A-CR-2353

Appeal from the Bartholomew
Superior Court

The Honorable James D. Worton,
Judge

Trial Court Cause No.
03D01-1801-F6-379
03D01-1801-F6-105

**Tavitas, Judge.**

# Case Summary

Brian J. Stewart appeals his sentence, received pursuant to his guilty plea, for one count of possession of methamphetamine, a Level 6 felony, and two counts of theft, Level 6 felonies. We affirm.

# Issue

Stewart raises one issue, which we restate as whether his sentence is inappropriate in light of the nature of his offenses and his character.

# Facts[1]

On January 7, 2018, a police officer responded to a report of a suspicious vehicle on grounds owned by the Indianapolis Museum of Art in Columbus, Indiana. On the scene, the officer located a Ford Explorer with its engine running and two occupants inside. The officer observed a male sitting in the driver's seat and a female in the passenger's seat. The officer recognized Stewart and Norma Holley ("Holley") from previous encounters. Stewart awakened after the officer identified himself. The officer observed several items in the vehicle, including a large wooden jewelry box, pieces of jewelry, and several other miscellaneous items.

---

[1] Stewart did not obtain the guilty plea hearing transcript for this appeal, and it appears that Stewart and the State cite to the probable cause affidavit for the statement of facts in their briefs. We, therefore, will do the same.

[4] Stewart admitted to the officer that he did not have permission to be on the property. Stewart then accelerated the vehicle in an attempt to flee. The officer was able to open the vehicle's door and told Stewart to place the vehicle in park, and Stewart complied. Stewart was then removed from the vehicle and placed in handcuffs. Another officer arrived at the scene and, as he opened the door to the vehicle to handcuff Holley, a handgun fell from between the passenger seat and door. Upon further investigation, it was determined that neither Holley nor Stewart had a permit to carry a handgun.

[5] Officers obtained a warrant to search the vehicle. They discovered official documents with Stephen Riga's name on them. Officers later learned that Riga's residence was burglarized on January 6, 2018. Behind the driver's seat, officers also found a black gym bag, which contained seven bags with ten syringes each. In addition, the gym bag contained a makeup bag, which contained more syringes, spoons with white residue, a scale with white residue, a clear bag of white powder, and two pills that the officer identified as hydrocodone.

[6] On January 7, 2018, Stewart was charged with unlawful possession of a syringe, a Level 6 felony; possession of methamphetamine, a Level 6 felony; possession of a controlled substance, a Level 6 felony; carrying a handgun without a license, a Class A misdemeanor; criminal trespass, a Class A misdemeanor; and conversion, a Class A misdemeanor.

[7] During the investigations, officers learned that Stewart and Holley were storing items in a storage unit. Officers later obtained a search warrant for the storage unit. In the storage unit, they recovered property stolen from Manuel Gonzalez and Jerry and Beth Sullivan. The officers recovered gardening tools, vehicle titles, social security cards, and passports.

[8] During a related subsequent investigation, an officer obtained a search warrant for another property in Columbus. The owner of that property had given Stewart and Holley permission to keep items in his detached garage. There, officers recovered property reported stolen by Lisa Thayer, Christopher and Nora Murr, and Grant Gaddis. The officers recovered flat screen televisions, a luggage bag, clothing, and a stolen automobile.

[9] On January 24, 2018, Stewart was charged under a separate cause number with one count of receiving stolen automobile parts, a Level 6 felony; three counts of theft, Level 6 felonies; and two counts of conversion, Class A misdemeanors.

[10] On August 13, 2018, Stewart pleaded guilty to possession of methamphetamine, a Level 6 felony, and to two counts of theft, Level 6 felonies. The remaining counts were dismissed.

[11] At sentencing, Stewart testified that he was in a rehabilitation facility in Florida from April to July 2017 for drug addiction. After Stewart returned to Indiana from Florida, he was fired from his job due to his lack of attendance. Stewart "didn't even look" for a job after he was terminated. Tr. Vol II p. 10. To support his daily drug use, Stewart "st[ole] things and s[old] them." *Id.*

[12]   The trial court found the following aggravators: (1) Stewart's criminal history; (2) Stewart's probation revocation; and (3) that Stewart had the opportunity for treatment in the past, outside of a penal facility, and had not been successful. The trial court did not find any mitigating factors. The trial court sentenced Stewart to two years for possession of methamphetamine and two years each on both counts of theft, all to be served consecutively for an aggregate sentence of six years. The trial court recommended that Stewart be placed in Purposeful Incarceration[2] and in a therapeutic community. Stewart now appeals.

## Analysis

[13]   Stewart maintains that his sentence is inappropriate and invites us to revise it pursuant to Indiana Appellate Rule 7(B), which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden to persuade this court that his or her sentence is inappropriate. *Wilson v. State,* 966 N.E.2d 1259, 1266 (Ind. Ct. App. 2012) (citing *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind. 2006)), *trans. denied.*

---

[2] Although Purposeful Incarceration is not defined in the record, in its Order the trial court stated that it "recommends to the Indiana Department of Corrections that [Stewart] be placed in Purposeful Incarceration and placed in a therapeutic community. Upon successful completion of the clinically appropriate substance treatment program as determined by [the Indiana Department of Corrections], the court will consider a modification to this sentence." Appellant's App. Vol. II p. 131.

[14]     In Indiana, trial courts can tailor an appropriate sentence to the circumstances presented; the trial court's judgment receives "considerable deference." *Sanders v. State,* 71 N.E.3d 839, 844 (Ind. Ct. App. 2017) (quoting *Cardwell v. State,* 895 N.E.2d 1219, 1222 (Ind. 2008)), *trans. denied.* In conducting our review, we do not look to see whether the defendant's sentence is appropriate or "if another sentence might be *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *Sanders,* 71 N.E.3d at 844 (citing *King v. State,* 894 N.E.2d 265, 268 (Ind. Ct. App. 2008)).

[15]     When reviewing a sentence, we look to the statutory ranges established for the classification of the offenses. The sentence for a Level 6 felony ranges from six months to two and a half years, with an advisory sentence of one year. Ind. Code § 35-50-2-7. Here, the trial court imposed three consecutive two-year sentences for possession of methamphetamine and two counts of theft, all Level 6 felonies.

[16]     "[T]he advisory sentence is the starting point the Legislature has selected as an appropriate sentence." *Green v. State*, 65 N.E.3d 620, 637-38 (Ind. Ct. App. 2016), *trans. denied.* A deviation from the advisory sentence, when determining the appropriateness of a sentence, requires us to examine whether there is anything more or less egregious about the offense committed by Stewart that "makes it different from the 'typical' offense accounted for by the legislature when it set the advisory sentence." *See Holloway v. State*, 950 N.E.2d 803, 807 (Ind. Ct. App. 2011) (quoting *Rich v. State*, 890 N.E.2d 44, 54 (Ind. Ct. App. 2008), *trans. denied*).

[17] Pursuant to Indiana Appellate Rule 7(B), we first review the nature of Stewart's offenses. Stewart contends that "there does not appear to be anything particularly aggravating about [his case] . . . that would set it apart as . . . more heinous or aggravated than any other possession [conviction]" for methamphetamine or theft. Appellant's Br. p. 12. Stewart admitted that he was unemployed and committed the thefts to fuel his drug addiction. Stewart was arrested after he was found asleep in the driver's seat of a running vehicle and in possession of a handgun without a license. After searching the vehicle, officers found numerous syringes, spoons with white residue, a scale with white residue, and a clear bag containing a white powder. Officers also found stolen property that belonged to several people from four separate burglaries in Stewart's storage unit and a detached garage.

[18] Next, we consider Stewart's character. "When considering the character of the offender, one relevant fact is the defendant's criminal history." *Garcia v. State*, 47 N.E.3d 1249, 1251 (Ind. Ct. App. 2015), *trans. denied.* Stewart's refusal to conform his conduct reflects poorly on his character. Stewart began consuming alcohol as a teenager and "picked up" "harder drugs" over the years. Tr. Vol. II p. 8. His criminal history includes convictions for illegal consumption of an alcoholic beverage, resisting law enforcement, and operating a vehicle with an alcohol concentration equivalent of .08% or greater. The instant offenses resulted from his use of methamphetamine. Additionally, according to the pre-sentence investigation report, Stewart's probation has been revoked in the past.

Stewart's criminal history shows that Stewart stole from multiple people to fuel his drug addiction. Despite this history, the trial court only sentenced Stewart to an aggregate sentence of six years and recommended that Stewart be placed in Purposeful Incarceration. Thus, the trial court gave Stewart another opportunity to receive treatment. Stewart has not convinced us that his sentence is inappropriate in light of the nature of the offenses and his character.

## Conclusion

Stewart has failed to meet his burden of demonstrating that his sentence is inappropriate in light of the nature of his offenses and his character. We affirm.

Affirmed.

Crone, J., and Bradford, J., concur.